

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable H. L. Washburn
County Auditor
Harris County
Houston, Texas

*overrules opinion #O-1942 in so far as it is in conflict with this opinion.*

Dear Sir:

Opinion No. O-5935
Re: Authority of Harris County
to proceed by condemnation
or otherwise for additional
right-of-way and to expend
its funds for maintenance
of a portion of the right-
of-way during the proceed-
ings.

Your letter of March 15, 1944, requests the opin-
ion of this department on the above subject. We quote your
letter as follows:

"I respectfully request your opinion in con-
nection with the following:

"On July 3, 1942, the District Engineer of
the Texas Highway Department wrote to Mr. Albert
Townsend, Right of Way Agent for Harris County,
as follows:

"Replying to your letter of July first, I
am attaching hereto copy of Highway Commission
Minute No. 19475, designating the North Loop as
a State highway.'

"Attached to this letter was a copy of a
portion of the Minutes of the State Highway De-
partment reading as set out in the order of the
Commissioners Court which I will hereafter quote.

NICATION IS TO BE CONSTRUED

Honorable H. L. Washburn, Page 2

"The Right of Way Department sent the
letter of the District Engineer to me, to-
gether with the copy of the Minutes of the
Commission, and I thereupon transmitted it
to the Commissioners Court of Harris County
with the following letter:

"'I attach a letter from Mr. Albert
Townsend enclosing a copy of a minute order
of the State Highway Commission on June 23,
1942, designating North Loop U. S. Highway
90 as a State highway. This minute should
be approved by the Commissioners Court and
the order recorded in its minutes. The Court
thereupon should authorize Mr. Townsend, as
Right of Way Agent, to obtain the necessary
right of way, payable from the 1941 Bond
Fund State Right of Way Budget in accordance
with plans, specifications and surveys of
the State Highway Department.'

"On July 13, 1942, the Commissioners
Court of Harris County entered an order in
its Minutes, Volume 11, page 528, reading
as follows:

"'Moved by Commissioner Tautenhahn,
seconded by Commissioner Graham, duly put
and carried, it is ordered that the follow-
ing order of the State Highway Commission,
designating North Loop U. S. Highway No. 90
as a State highway be approved:

"'"In Harris County, it is ordered that
a loop on U. S. 90, in the vicinity of Hous-
ton, be and is hereby designated for future
construction and maintenance purposes, ex-
tending from a connection with the present
U. S. Highway 90 east of the Post Oak Road
west of Houston, thence northeast to a con-
nection with U. S. Highway 290, thence east
through the north side of Houston along, or
in the vicinity of 29th Street, Linder Street
and Stonewall Street, thence to a connection
with U. S. Highway 90 east of Houston, this

Honorable H. L. Washburn, Page 3

designation to include such connections as
are necessary to serve State Highway 73 east
of Houston, it being clearly understood that
this designation shall not in any manner in-
clude any portion of the now existing Post
Oak Road."

"'And it is further ordered that Albert
Townsend, Right of Way Agent, be authorized
to secure the necessary right of way payable
from the 1941 Bond Fund, State Right of Way
Budget, in accordance with plans and specifi-
cations and surveys of the State Highway De-
partment.'

"Immediately thereafter, the Right of
Way Department of Harris County, as the agents
of the State Highway Department, proceeded to
the acquisition of all necessary right of ways
under authority of Article 6674n, Vernon's
Annotated Civil Statutes. Under the field
notes and data supplied by the Highway Depart-
ment, the right of way acquired was original-
ly 100 feet, but after a portion of the neces-
sary lands had been acquired, the plans were
widened to 150 feet. Some of the connecting
roads already in existence formed links in
the new highway. The whole project will be
referred to in this letter as the 'North
Loop'.

"As an example of the particular prob-
lem which confronts me, I will take Kelly
Street, which was originally a 60-foot Coun-
ty road. None of the connecting roads in
the North Loop were any wider than 60 feet.
In all cases where there was an existing
roadway, in order to comply with the require-
ments of the State Highway Department, it was
necessary to get at least 90 feet of addi-
tional right of way to widen the existing
roadway. This was true in the case of Kelly
Street. Kelly was originally 60 feet wide,
and at the request of the Highway Department,

Honorable H. L. Washburn, Page 4

an additional 40 feet was first obtained,
20 feet on either side of the original road-
way. Subsequently, the Right of Way Depart-
ment was ordered to obtain an additional 50
feet, making the total width 150 feet.
Actual construction by the Highway Depart-
ment on Kelly Street has not been begun, al-
though a great deal of the right of way has
been acquired, and the street has been
widened upon land taken in the name of the
State,

"In 1941, various bond issues were
submitted to the voters of Harris County.
One of the issues submitted was for $900,000.00
to be used for the specific purpose of acquir-
ing right of ways for State highways. The
bonds were voted because the funds available
to the County otherwise were insufficient to
pay for the large amounts of expensive right
of way required for the construction of the
State highways. The bond proceedings specifi-
cally provided that no part of these funds
should ever be expended for any other purpose
than the acquisition of right of ways for
designated State highways.

"I have quoted the correspondence and
the orders above for the purpose of showing
that there was no question in the mind of any
of the officials who came in contact with the
matter originally that the designation by the
Highway Commission of the North Loop was final.
Otherwise, expenditure of bond funds from the
1941 bond issue could not possibly have been
made for the purpose of paying for this right
of way, as, unless it did actually constitute
a State highway, the expenditure of such funds
thereon would constitute a diversion, under
the authority of such cases as Moore, County
Judge, vs. Coffman, 109 Tex. 96, 200 S.W. 374;
and Black, et al. vs. Strength, County Judge,
246 S.W. 79. The proceedings for the issuance
of the bonds specifically pledged this fund

Honorable H. L. Washburn, Page 5

for this particular purpose. It is obvious that no portion of this fund could be expended for the acquisition of right of ways for County roads.

"There is still much of the right of way on the North Loop to be acquired. The only funds available for the purchase of such right of way are the bond funds above mentioned. The Commissioners Court and I were of the opinion that the order of the State Highway Commission was sufficient, taken in connection with all of the other proceedings which have been since had, to constitute the North Loop a part of the State Highway System. Hence, the bond funds have been and are now being used for the purpose of paying for the widened right of way and the acquisition of new right of way for this State highway.

"Was such action lawful? Is the County authorized to proceed by condemnation or otherwise, as the agent of the State, to acquire the additional necessary right of way for this project and to pay for it out of the bond fund above mentioned?

"These questions have been raised at this somewhat late date because of difficulties which have arisen particularly in connection with Kelly Street, but which will be applicable to the North Loop as a whole. By reason of its widening and increased traffic, Kelly Street has gotten into a very bad condition. One of the members of the Commissioners Court took the matter up with the Resident Engineer, and informed him that it would be necessary to add to this street a considerable amount of material. In the opinion of the Commissioner, it will be necessary to add to this street shell or other paving material in excess of 1,000 cubic yards. The Resident Engineer addressed a letter to the County Commissioner under date of March 7, indicating

Honorable H. L. Washburn, Page 6

that he was of the opinion that the maintenance
of this portion of this State highway was the
problem of Harris County. His letter states
that it is the custom of the Highway Commission
to take over such roads 'for maintenance' only
'after the construction is completed'.

"I find myself unable to agree with the con-
clusions expressed by the District Engineer of
the State Highway Commission. I am of the opin-
ion that the County is expressly prohibited by
law from making any further expenditures on
the North Loop, except the acquisition of right
of ways. We have been proceeding with the ac-
quisition of the right of way in accordance
with the provisions of Article 6674n, Vernon's
Annotated Statutes. As you know, the decisions
construing this statute have said that it does
nothing more than to authorize the county, as
the agent of the State, to acquire the neces-
sary right of way. In this connection, the
Supreme Court, in the case of Robbins vs. Lime-
stone County, 114 Tex. 345, 268 S.W. 915, 918,
said in part:

"'The establishment of public highways be-
ing primarily a function of government belong-
ing to the state, the right to establish them
resides primarily in the legislature, and in
the absence of constitutional restrictions, the
legislature may exercise that right direct or
delegate it to a political subdivision of the
state, or to such other agency or instrumental-
ity, general or local in its scope, as it may
determine. The exercise of this right by a
political subdivision of the state, or by local
officers, is founded upon statutory authority
therefor. The legislature may exercise pos-
session of public roads and control over them,
by and through such agencies as it may designate.'

"It is well settled that the statutes give
exclusive control over all State highways to the
State Highway Commission. Formerly, the counties

625

were authorized to aid in the construction and maintenance 'of any section or sections of a macadamized, graveled or paved road or turnpike in said county constituting a part of the State Highway System and to enter into contracts or agreements with the State Highway Department for that purpose.' Article 6674c, R.S. 1925. This authority was expressly repealed by Acts 1932, 42d Legislature 3d C.S., page 15, Chapter 13, Section 3. Not satisfied with a mere repeal of the authority theretofore given to the county to expend funds for maintenance of State highways, the legislature by statute expressly prohibited such expenditures, other than for right of ways. Article 6674q-4, Vernon's Ann. St., reads as follows:

"'All further improvement of said State Highway System shall be made under the exclusive and direct control of the State Highway Department and with appropriations made by the legislature out of the State Highway fund. Surveys, plans and specifications and estimates for all further construction and improvement of said system shall be made, prepared and paid for by the State Highway Department. No further improvements of said system shall be made with the aid of or with any money furnished by the counties except the acquisition of right of ways which may be furnished by the counties, their subdivisions or defined road districts. But this shall in no wise affect the carrying out of any binding contracts now existing between the State Highway Department and the Commissioners Court of any county, for such county, or for any defined road district. In the development of the system of State highways and the maintenance thereof, the State Highway Commission shall from funds available to the State Highway Department, provide:

"'(a) For the efficient maintenance of all highways comprising the State system.

Honorable H. L. Washburn, Page 8

"'(b) For the construction, in coopera-
tion with the Federal government to the extent
of Federal aid to the State, of highways of
durable type of the greatest public necessity.

"'(c) For the construction of highways,
perfecting and extending a correlated system
of State highways, independently from State
funds.'

"It is to be noted that subdivision (a)
above.quoted, taken in connection with the
sentence preceding it, makes it the express
statutory duty of the State Highway Commis-
sion to maintain all State highways. The
other sentence preceding that which I have
underscored above prohibits the expenditure
of money by the counties on such highways.
The use of the word 'improvements' in the
first underscored sentence cannot be miscon-
strued because the statute (Article 6674a)
defines it to mean:

"'The term "improvement" shall include
construction, reconstruction or maintenance,
or partial construction, reconstruction or
maintenance and the making of all necessary
plans and surveys preliminary thereto.'

"It is plain to me, therefore, that the
statute expressly prohibits the County from
expending County funds upon maintenance of a
State highway. If there are any other stat-
utes or decisions which would affect this con-
clusion, they have escaped me. Is my view of
these statutes correct?

"Considerable sums of money are now be-
ing expended upon this highway upon the theory
that it is a State highway. As above stated,
these funds are the proceeds of bond funds
which cannot be otherwise expended. If the
Commissioners Court and I are mistaken in our
views that the order of the Highway Commission

Honorable H. L. Washburn, Page 9

and the subsequent actions in requesting the
acquisition of the additional right of ways,
actually made this North Loop a State highway,
then of course the expenditure of any further
funds from the proceeds of the bond issue for
the purchase of right of way as for a State
highway would be unlawful. On the other hand,
if it is a part of the State Highway System,
it seems to me that the County is expressly
prohibited by the statute from expending any
funds in maintaining any portion of it. Please
give me your opinion upon these matters, in
answer to the questions above specifically pro-
pounded."

Article 6674n, Revised Civil Statutes of 1925 as
amended by Acts 1933, 43rd Legislature, Chapter 207; Acts
1935, 44th Legislature, Chapter 199, cited but not quoted
above reads in part as follows:

"Whenever, in the judgment of the State
Highway Commission, the use or acquisition
of any land for road, right of way purposes,
timber, earth, stone, gravel or other materi-
al, necessary or convenient to any road to be
constructed, reconstructed, maintained, widened,
straightened or lengthened, or land not ex-
ceeding one hundred (100) feet in width for
stream bed diversion in connection with the
locating, relocating or construction of a de-
signated State Highway by the State Highway
Commission, the same may be acquired by pur-
chase or condemnation by the County Commission-
ers Court. Provided that the County in which
the State Highway is located may pay for same
out of the County Road and Bridge Fund, or any
available county funds.

"Any Commissioners Court is hereby author-
ized to secure by purchase or by condemnation
on behalf of the State of Texas, any new or
wider right of way or land not exceeding one
hundred (100) feet in width for stream bed

diversion in connection with the locating, re-locating or construction of a designated State Highway, or land or lands for material or borrow pits, to be used in the construction, reconstruction, or maintenance of State Highways and to pay for the same out of the County Road and Bridge Fund, or out of any special road funds or any available county funds. The State Highway Commission shall be charged with the duty of furnishing to the County Commissioners Court the plats or field notes of such right of way or land and the description of such materials as may be required, after which the Commissioners Court may, and is hereby authorized to purchase or condemn the same, with title to the State of Texas, in accordance with such field notes. Provided that in the event of condemnation by the County the procedure shall be the same as that set out in Title 52, Articles 3264 to 3271, inclusive, Revised Civil Statutes of Texas, of 1925. Provided that if the County Commissioners Court of any County in which such right of way is, in the judgment of the State Highway Commission, necessary for the construction of a part of a designated State Highway shall fail or refuse to secure by purchase or by condemnation for or on behalf of the State of Texas, such right of way or part thereof, immediately and as speedily as possible, under said Title 52, Articles 3264 to 3271, inclusive, Revised Civil Statutes of Texas, of 1925, after being served with a copy of an order of the State Highway Commission identifying by field notes, the part of the Highway necessary for the construction of such designated State Highway and requesting such County Commissioners Court to secure same, then and in such event and within ten (10) days after the service of such notice, said State Highway Commission shall direct the Attorney General of Texas, to institute condemnation proceedings in the name of the State of Texas, for the purpose of securing such right of way. The right of eminent domain to condemn any part of a right of way for a State designated highway,

Honorable H. L. Washburn, Page 11

under the conditions herein set out is hereby
conferred on the State Highway Commission and
the jurisdiction for the exercise of such right
is hereby conferred on the County Court of
Travis County. . . . . ."

The courts of Texas have consistently held that
Article 6674n, supra, authorizes the commissioners' court
as agent for the State to purchase or condemn land for
right-of-way purposes whenever in the judgment of the State
Highway Commission the use or acquisition of such land is
necessary or convenient in connection with the locating, re-
locating or construction of a designated State Highway; and
that the determination of the width of the strip of land to
be acquired remains within the discretion of the Highway
Commission. Wilbarger County vs. Hall, 55 S.W. (2d) 797;
Robbins vs. Limestone County, 268 S.W. 915; Heathman vs.
Singletary, 12 S.W. (2d) 150; Iverson vs. Dallas County,
110 S.W. (2d) 255; Watt vs. Studer, 22 S.W. (2d) 709 and
San Patricio County vs. Maxwell, 56 S.W. (2d) 295.

Accordingly, in answer to your first question, we
advise that the expenditure of the county funds described in
your letter for State Highway right-of-way purposes was and
is authorized.

Your second question presents a problem more diffi-
cult of proper determination. It appears to us that the
paramount point controlling the main issue is as to when a
route or road becomes a designated "State Highway" or a part
of the "State Highway System". To arrive at the conclusion
herein reached we have made a diligent study of the history
of the legislation that enumerates the rights, duties and
powers of the Highway Commission and the commissioners' courts
together with an exhaustive search of court decisions con-
struing the various statutes.

Prior to the adoption of Article 6674n, supra, as
amended, the various counties located, constructed and main-
tained in whole or in conjunction with the Highway Depart-
ment, the public roads within their respective boundaries.
In many instances by contract with the Highway Department
the counties provided funds for all preliminary, intermedi-
ate and complete expenditures necessary in the selection of

Honorable H. L. Washburn, Page 12

a route and the construction of a road for highway purposes, frequently sharing in the expense of maintenance thereof after such road had been accepted as a State Highway.

The State Highway Department, pursuant to its creation and delegated authorities, over a period of years, "exercised its powers and functions through the several counties and defined road districts of the State as its agencies for said purposes, and later resumed full and sole administration, control of, and jurisdiction over, the laying out, establishment, construction and maintenance of all public roads which were, or might become, a part of the system of designated State Highways".

Subsequently, in 1932, Acts of the 42nd Legislature, 3rd Called Session, Chapter 13 thereof (Article 6674q-1-14), the "State Assumption of Highway Bonds" Act was adopted, reading in part from the caption thereof as follows:

"Declaring a State policy with reference to the construction and maintenance of a system of State highways from a source of income other than ad valorem taxes; providing for the control, construction and maintenance of a system of State highways at state expense, and permitting the counties to furnish rights-of-way."

The State Highway Commission is authorized under Articles 6673, V.A.C.S. "to take over and maintain the various State Highways in Texas, and the counties through which said highways pass shall be free from any cost, expense or supervision of such highways." And in Article 6674a, "Definition of Terms", it is said:

"The term 'highway' as used in this act shall include any public road or thoroughfare or section thereof and any bridge, culvert or other necessary structure appertaining thereto. The term 'improvement' shall include construction, reconstruction or maintenance, or partial construction, reconstruction or maintenance and the <u>making of all necessary plans and surveys preliminary thereto.</u>" (Emphasis ours)

Honorable H. L. Washburn, Page 13

Article 6674e entitled "Appropriations from Highway Fund" reads as follows:

"All moneys now or hereafter deposited in the State Treasury to credit of the 'State Highway Fund', including all Federal aid moneys deposited to the credit of said fund under the terms of the Federal Highway Act and all county aid moneys deposited to the credit of said fund under the terms of this Act shall be subject to appropriation for the specific purpose of the improvement of said system of State Highways by the State Highway Department. (Inserted by compiler from Acts 1925, 39th Leg., ch. 186, p. 457, § 5.)" (Emphasis ours)

Following the provisions for the appropriations from the State Highway Fund the Legislature provided, in Article 6674h, V.A.C.S., that "all contracts proposed to be made by the State Highway Department for the improvement of any highway constituting a part of the State Highway System or for materials to be used in the construction or maintenance thereof shall be submitted to competitive bids."

Chapter 324, 48th Legislature, 1943 (Article 6674q-1-14) constitutes the last passage of the Road Bond Assumption Act. The intervening Legislatures from 1932 to 1943 enacted measures similar, with slight modifications. For the purpose of this opinion such Act will hereafter be referred to as Article 6674q.

Article 6674q-1 expresses the policy of the State and we quote therefrom as follows:

" . . . . it is further declared to be the policy of the state to take over, acquire, purchase, and retain the interest and equities of the various counties and defined road districts in and to the highways, not previously taken over, acquired, and purchased and constituting on January 2, 1939, a part of the system of designated State Highways, and to acquire and purchase the interest and equities of the various counties and defined road districts in and to the roads not constituting a part of the

Honorable H. L. Washburn, Page 14

system of designated State Highways as of
January 2, 1939, and under the provisions of
this Act to acquire such interest and equities
in such roads hereafter to be constructed with
money furnished by the state, and to reimburse
said counties and districts therefor, and to
provide for the acquisition, establishment,
construction, extension and development of the
system of designated State Highways of Texas,
from some source of income other than the
the revenues derived from ad valorem taxes,
. . . ."

The Legislature, as indicated in Article 6704, V.A.
C.S., restricted the maximum width to which the commissioners'
court may establish a county road to 100 feet. Reading from
the Act we find as follows:

"Art. 6704.

"The commissioners' court shall classify
all public roads in their counties as follows:

"1. First class roads shall be clear of
all obstructions, and not less than forty (40)
feet nor more than one hundred (100) feet wide;
. . . ."

Considering the above cited statutes together, we
find:

1. That the State Highway Department has
sole and exclusive jurisdiction over "State High-
ways", and the "State Highway System", locating,
constructing and maintaining such out of State
funds.

2. That the counties may, as agents for
the State, purchase or condemn land for State
Highway purposes.

3. That when a public road becomes a part
of the "State Highway System" or a designated

Honorable H. L. Washburn, Page 15

"State Highway" the counties cannot render further aid or expend funds thereon.

4. That the State Highway Department shall receive competitive bids for the construction or reconstruction of any part of the State Highway System.

5. That a county road may not be established etc. at a width greater than the maximum of 100 feet.

The pertinent facts, necessary to the determination of this question may be stated as follows:

1. Harris County, by bond election, created a fund to be used for the particular purpose of purchasing rights-of-way for State Highways in Harris County.

2. The State Highway Commission, by order dated June 23, 1942, designated the road in question "for future construction and maintenance purposes" reciting further in said order, "this designation to include such connections as are necessary to serve Highway 73 east of Houston".

3. The commissioners' court, pursuant to solicitation by the Highway Commission, proceeded to acquire the necessary 150 foot right-of-way acting as agents of the State for State Highway purposes.

4. Kelly Street, an integral part of the selected route, having been widened to 150 feet is in urgent need of repair to accommodate the existing traffic thereon.

Having considered the relative statutes and reviewed the facts, we must now seek to determine the intention of the Legislature as it appears in the written portions of the law and the implied provisions if such are found to exist. Before attempting to give our conclusions, we think it pertinent here to briefly state the question we seek to answer:

- Does Kelly Street become a part of the State Highway System or become a State Highway, within the purview of the numerous statutes, by virtue of the order of the Highway Commission dated June 23, 1942, and the subsequent acts of the commissioners' court pursuant thereto?

Article 6673, supra, defines, among other things, improvement to include "and the making of all plans and surveys preliminary thereto." Article 6674e, supra, provides that the "State Highway Fund" shall be used for the specific purpose of the improvement of said system of State Highways by the State Highway Department." "All contracts proposed to be made by the State Highway Department for the improvement of any highway constituting a part of the State Highway System . . . . shall be submitted to competitive bids". Article 6674h, V.A.C.S.

The 48th Legislature in Chapter 324, supra, declared it the policy of the State to take over the burden of the State Highway System and to reimburse the respective counties for moneys heretofore expended on such system; to provide for the acquisition, establishment, construction, etc. of such from funds other than those raised by the county; expressed not only that all further improvement of such System shall be made out of the State Highway Fund, but went further to say that no further improvement of said System shall be made with county money, except the acquisition of rights-of-way.

The right of eminent domain to condemn any part of an 150 foot right-of-way for a State designated highway rests exclusively on the Highway Commission. Article 6674n, supra; Robbins vs. Limestone County, supra; Wilbarger County vs. Hall, supra; Watt vs. Studer, supra; Iverson vs. Dallas County, supra; and Angler vs. Balser, infra.

Authority of the commissioners' court to condemn land for county road purposes has been construed to limit its taking of a right-of-way to a maximum width of 100 feet as provided in Article 6704, supra. Bryan vs. McKinney, 279 S.W. 475.

Honorable H. L. Washburn, Page 17

Our search has revealed a vast number of court decisions dealing with the rights and powers of the State Highway Commission and the commissioners' court in condemning land for Highway purposes, including many involving the question of liability for damages sustained during the layingout, construction and maintenance of such highway. Every decision consistently holds that from the instant of the selection of a route and the designation of such to be a part of the State Highway System, thus authorizing the commissioners' court to proceed under Article 6674n, supra, that the sole and exclusive jurisdiction of such route rests in the State Highway Department. In many instances the route in question was merely a naked surveyed strip across fields, farms or pastures with no road improvement; another situation found a house and farm improvements established within the right-of-way boundaries of the staked new location or route. In every single case the court held that such location, route or plan constituted a part of the State Highway System and was designated for State Highway purposes. Watt v. Studer, supra; Shelby County v. Caldwell, 48 S. W. (2d) 761; Fletcher v. King, 79 S. W. (2d)980; Mosel v. Real, 49 S. W. (2d) 475; Aue v. State, 77 S. W. (2d) 606.

In the case of San Patricio county vs. Maxwell, supra, the Highway Commission selected a proposed route as Highway No. 9 through the lands of Hughes, Lane and Horn. The commissioners' court proceeded to acquire the necessary land and by agreed judgment obtained the property of appellees. The Highway Commission prior to the commencement of construction over such route elected to change such designation and selected an entirely different one. Appellees sought and obtained an injunction in the district court restraining said commissioners' court from abandoning the route first designated and from procuring the right-of-way over the newly designated route around the lands of Hughes, Lane and Horn.

The Court of Civil Appeals in reversing the judgment dissolved the injunction and said in part as follows:

"It is apparent from the bill on which the writ was granted that highway No. 9 is a properly designated 'State Highway' over which the

Honorable H. L. Washburn, Page 18

> highway department has control, and that the
> county commissioners' court is acting for and
> in behalf and under the control of that depart-
> ment in procuring the right of way for said
> highway, as provided in article 6674n, as amend-
> ed by the Forty-First Legislature (Acts 1930,
> 41st Leg., 5th C.S., p. 243, c. 79, § 1 (Ver-
> non's Ann. Civ. St. art. 6674n). It follows,
> therefore, and is apparent from the petition
> below, that the power of designating the route
> of highway No. 9, with reference to the lands
> of Hughes, Lane, and Horn, rests in the high-
> way department, and not in the commissioners'
> court, and that the state highway commission-
> ers are necessary parties to any litigation af-
> fecting the exercise of that power. . . ."

Similar facts existed in the case of Nairn, et al.
vs. Bean, et al., supra, and in others too numerous to cite
here.

In Angier vs. Balser, supra, the commissioners'
court was attempting to condemn a right-of-way greater in
width than 100 feet. Appellant sought to enjoin such as
illegal because violative of subdivision 1 of Article 6704,
Revised Statutes of 1925 as amended by Chapter 197, para-
graph 1, Acts 1929, (Article 6704, V.A.C.S.). The Austin
Court of Civil Appeals held that the commissioners' court
acted as agents for the State upon solicitation by the State
Highway Commission; that the highway to be constructed across
appellant's land had been duly designated as a State High-
way and that such taking for State Highway purposes was not
violative of such Article. Citing Brown vs. McKinney, supra.

Briefly we wish to call to your attention other
points relating to the statutes involved here upon which the
courts of Texas have placed their construction.

Funds from the sale of bonds voted by a county
for State Highway purposes cannot be used otherwise. Fletcher
vs. King, supra.

Honorable H. L. Washburn, page 19

- Bonds ordered for State right-of-way purposes for _improvement_ of Highway 27 could be used for right-of-way purposes of _newly designated_ route of Highway 27. Mosel vs. Real, et al., supra.

Construction of _any part_ of route by Highway Department makes the State responsible in damages to injured party because such constitutes _a part_ of _the State Highway System_. City of Wichita Falls vs. Real Estate Trust Co., 135 S. W. (2d) 736; Cernouch vs. Colorado County, 48 S. W. (2d) 471.

Immediately when such route is laid out or construction is started the commissioners' court has no further power, for county purposes, in connection therewith. Wilbarger County vs. Hall, supra.

Being unable to find authority conflicting with the above decisions, we conclude that a designated State Highway or a part of the State Highway System cannot be measured by degrees as such but that the statutes expressly constitute, and by law determine, when such route or road becomes a designated part of the System. The Highway Commission has exclusive jurisdiction in the selection of such route or road as will constitute such System, but immediately upon its exercise of such discretion and the entering of its order delegating to the commissioners' court the authority to acquire the necessary land and such court proceeds accordingly, such route or road becomes duly designated.

We therefore, advise that in our opinion Kelly Street could not constitute a designated State Highway or a part of the State Highway System and at the same time be a county road. Accordingly Harris County cannot pay for the maintenance or improvement of the road as such would constitute an unauthorized undertaking and the illegal spending of county funds.

Our opinion No. O-1942, approved August 16, 1940, relating to the date upon which certain bonds may become eligible for participation in county and Road District Highway Funds, does not concern the identical question discussed here, and does not conflict with the conclusions herein stated.

Honorable H. L. Washburn, page 20


        We wish to thank you for the excellent letter
which was very helpful and hope that we have satisfactor-
ily answered the questions presented.

                          Yours very truly

                     ATTORNEY GENERAL OF TEXAS


                  By     Harris Toler
                          Harris Toler
                          Assistant

HT:ff

APPROVED
OPINION
COMMITTEE
CHAIRMAN